UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

GEEBO LLC,

        *Plaintiff,*

v.

                                Case No.  2:19-cv-00175-PP

VILLAGE OF SOMERS,
TIMOTHY KITZMAN,
JEFFREY DAVISON,
JOHN/JANE DOES,

           *Defendants.*

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

---

### INTRODUCTION

      This action involves a tavern, The Somers House, operated by the Plaintiff, which is dissatisfied with restrictions placed on a cabaret license issued by the Village of Somers (the "Village") according to the Village ordinances.  The Plaintiff has asserted a myriad of evolving claims against the Village and its officials in its original Complaint, Amended Complaint, and Proposed Second Amended Complaint.  The current operative pleading is Plaintiff's Amended Complaint filed with the Court on March 29, 2019.[1]  This motion seeks dismissal of all of the claims in the Amended Complaint on the merits and with prejudice.

---

[1] The Plaintiff filed a Motion for Leave to File Second Amended Complaint on August 5, 2020.  The Defendants opposed that motion and filed a Response to the Motion on August 11, 2020. As of the date of filing of the Motion for Summary Judgment accompanying this Memorandum, the Court has not ruled on the Plaintiff's Motion for Leave to File Second Amended Complaint.

## FACTUAL BACKGROUND

In April 2015, the Town of Somers incorporated as the Village. (Defs.' Statement of Proposed Material Facts ("DSPMF"), ¶ 1.) One year later, the Village adopted an ordinance requiring local establishments holding a "Class B" liquor license to obtain a cabaret license if they wish to offer entertainment options such as music or dancing. (*Id.*, ¶¶ 2–4.) The cabaret license ordinance appeared in Village of Somers Code of Ordinances (the "Village Ordinances") § 12.15 and required establishments seeking a cabaret license to first file an application for a six month probationary cabaret license. (*Id.*, ¶¶ 5–8.) If the Village granted an establishment a probationary license following an investigation of the applicant and deliberation in open session at a public hearing, and the establishment held the probationary license for six months, then the Village Board was to consider the issuance of a regular cabaret license, which would again trigger an investigation of the applicant by the Village. (*Id.*, ¶¶ 6–12.) The cabaret license ordinance featured a range of rules and limitations relating to cabaret entertainment, and permitted the Village of Somers Board of Trustees (the "Village Board") to place additional or further limitations on a probationary or regular cabaret license. (*Id.*, ¶¶ 9, 12–13.)

In May 2016, the Plaintiff and five other establishments applied for probationary cabaret licenses from the Village. (*Id.*, ¶ 14.) The Village then conducted an investigation of each applicant, which included a report of complaints regarding each establishment from the Kenosha Sheriff's Department. (*Id.*, ¶ 15.) The Plaintiff and another applicant, the Upper Deck Bar ("Upper Deck"), had a significant history of police reports stemming from incidents occurring at or near those establishments. (*Id.*, ¶ 16-17.) The other four applicants had very few incidents by comparison. (*Id.*) In addition, there was at least one instance where a local property owner had

2

written to Town/Village of Somers personnel and Board members and complained of noise, disorderly conduct, and vandalism stemming from the Plaintiff's establishment. (*Id.*, ¶ 18.)

At a May 24, 2016 Village Board meeting, the Village Board considered all six probationary cabaret license applications. (*Id.*, ¶ 19.) The Village Board gave particular consideration to the Plaintiff's application, along with that of Upper Deck, due to the significant number of recent incidents involving those particular establishments. (*Id.*, ¶¶ 20–26.) The Village Board allowed the Plaintiff and Upper Deck to speak publicly through their respective counsel, and thoroughly discussed the myriad issues occurring at the two establishments. (*Id.*, ¶¶ 20–26.) Though the Plaintiff had a similar volume of incidents to Upper Deck during the prior twelve months, the Village Board decided to grant probationary cabaret licenses to each applicant except for Upper Deck. (*Id.*, ¶¶ 21, 27.) The probationary cabaret licenses were to run until November 20, 2016. (*Id.*, ¶ 28.)

During the effective period of the Plaintiff's probationary cabaret license, there were numerous incidents logged by the Kenosha Sheriff's Department involving the Plaintiff's establishment for a variety of reasons, including noise complaints, complaints regarding numerous instances of disorderly conduct, and complaints of battery and theft. (*Id.*, ¶ 29.) There were also numerous phone calls involving the Plaintiff's establishment documented by the Kenosha Sheriff's Department during the same period of time, including for loud music both inside and outside of the establishment. (*Id.*, ¶ 29.)

Near the expiration of the probationary cabaret license period, all five probationary cabaret license-holders applied for regular cabaret licenses. (*Id.*, ¶ 30.) However, the Plaintiff's application did not provide the Village with sufficient information, and the Village requested additional information from the Plaintiff on January 18, 2017. (*Id.*, ¶¶ 31–33.) Later that month,

the Village Board granted regular cabaret licenses to the other four applicants. (*Id.*, ¶ 34.) The Plaintiff then submitted a new regular cabaret license application on February 17, 2017. (*Id.*, ¶ 35.)

The Village Board considered the Plaintiff's application at a public meeting on February 28, 2017. (*Id.*, ¶ 36.) By the time the hearing occurred, the Village had been made aware of the complaints regarding the Plaintiff's establishment occurring during the effective period of the Plaintiff's probationary cabaret license. (*Id.*, ¶ 36.) At the meeting on February 28, 2017, the Village Board exercised its discretion to grant the Plaintiff a cabaret license, but included restrictions on hours of cabaret entertainment and a prohibition on outdoor cabaret entertainment. (*Id.*, ¶ 37.)

Following the Village Board's decision to grant the Plaintiff a restricted cabaret license, the Plaintiff sought administrative review of the Village Board's decision as provided for under the Village ordinances and Wisconsin Statutes, but withdrew its request for review prior to the administrative hearing scheduled for May 1, 2017. (*Id.*, ¶ 38.)

The Plaintiff commenced this action on February 1, 2019. (Dkt. #1.) In the original Complaint, the Plaintiff named the Village as the lone defendant, asserting claims for violations of 42 U.S.C. § 1983 based upon alleged substantive due process and equal protection violations. (*Id.*, ¶¶ 34–47.) In support of these claims, the Plaintiff alleged that it "satisfied all obligations during the probationary period without complaint from any resident" such that the Village Board lacked a basis to place restrictions on the Plaintiff's regular cabaret license. (*Id.*, ¶ 37.) In addition, the Plaintiff alleged that then-Village Trustee Joseph Cardinali had a "personal animus and motivation to put the Somers House out of business" such that the Plaintiff was treated differently than other establishments. (*Id.*, ¶ 45.)

4

The Plaintiff then filed an Amended Complaint on March 29, 2019, which is presently still the operative pleading in this matter. (Dkt. #12.) In the Amended Complaint, the Plaintiff adds Village Clerk Timothy Kitzman and Village Attorney Jeffrey Davison as named defendants in addition to the Village, now asserting the following causes of action: (1) violation of 42 U.S.C. § 1983, based upon substantive due process, against Mr. Kitzman and Mr. Davison, in their individual capacities; (2) violation of 42 U.S.C. § 1983, based upon equal protection, against Mr. Kitzman and Mr. Davison, in their individual capacities; (3) a *Monell* claim against Mr. Kitzman, in his individual capacity; (4) a *Monell* claim against Mr. Davison, in his individual capacity; (5) a *Monell* claim against John/Jane Doe(s), in his/her official capacity; and (6) a *Monell* claim against the Village. (*Id.*, ¶¶ 59–147.)

Attached to the Amended Complaint is the Declaration of Joseph Cardinali, dated January 21, 2019. (Dkt. #12, Ex. C.) Relying on the Cardinali declaration, the Amended Complaint alleges that Mr. Kitzman and Mr. Davison "duped" Mr. Cardinali "into believing that the Somers House was a problem," such that Mr. Cardinali "went about doing everything [he] could to cause their business to close." (Dkt. #12, ¶ 48.) The Amended Complaint further alleges that Mr. Cardinali "was able to persuade the rest of the Board to vote to restrict the Somers House's cabaret license" despite "never being shown evidence of problems at The Somers House, despite being told damning evidence existed." (*Id.*, ¶¶ 48, 54.) As will be described in detail in the below argument sections, Mr. Cardinali was deposed in this case and could not support the underlying basis for his conclusory statements in his declaration that he was "duped" and was never shown evidence of problems at Plaintiff's establishment. Additional relevant facts will be set forth in the below argument sections.

5

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where factual disputes do exist, the non-movant's version of events is accepted as true at this stage of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a genuine issue of material fact for the cause of action to survive. Id. at 247–48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

All of the Plaintiff's claims should be dismissed on the merits and with prejudice. The Plaintiff's equal protection claim fails because the Plaintiff cannot show that it was intentionally treated differently than any similarly situated party to the Plaintiff's detriment. If anything, the Plaintiff received more favorable treatment than the other most closely situated party—Upper Deck, which was denied even a probationary cabaret license. In addition, the Plaintiff cannot show that the placement of restrictions on the Plaintiff's cabaret license lacked a rational basis.

6

Moreover, in light of the facts in the record, the highly suspect Declaration of Joseph Cardinali does not advance any claim of "totally illegitimate animus" towards the Plaintiff by Defendants Kitzman or Davison that would condemn the enforcement of the Village ordinances with respect to the Plaintiff.

Additionally, the Plaintiff's substantive due process claim also fails for a few reasons. First, the Plaintiff failed to allege and cannot show that available state remedies were inadequate, meaning that the Plaintiff must show an additional constitutional violation to maintain a substantive due process claim. The Plaintiff's only other claim of a constitutional violation invokes the equal protection clause and should be dismissed. Therefore, the Plaintiff cannot maintain its substantive due process claim. Second, the Plaintiff cannot show that it was entitled to an unrestricted cabaret license such that it had a protected property interest implicating substantive due process concerns. Third, the Plaintiff cannot show that the placement of restrictions on the Plaintiff's regular cabaret license was arbitrary and irrational.

Even if the Plaintiff could show a constitutional violation, which it cannot, Defendants Kitzman and Davison are entitled to qualified immunity, as their actions did not violate a clearly established constitutional right.

Lastly, the Plaintiff's *Monell* claims must be dismissed. First, the Plaintiff's *Monell* claims against Defendants Kitzman and Davison, in their official capacities, should be dismissed as redundant given that a *Monell* claim is also asserted against the Village. Second, as *Monell* claims require an underlying constitutional violation, and the Plaintiff cannot show that a constitutional violation occurred, the Plaintiff's *Monell* claims must fail.

7

**I.** **The Plaintiff's 42 U.S.C. § 1983 claim based upon equal protection must be dismissed because: (1) the Plaintiff has failed to show that it was intentionally treated differently from others similarly situated and that the Village's actions lacked a rational basis, and (2) the Plaintiff has failed to show totally illegitimate animus toward the Plaintiff by the Village.**

The Plaintiff's equal protection claims against the individually named Defendants must be dismissed. While the Equal Protection Clause of the Fourteenth Amendment has traditionally been a safeguard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions, it is also understood "to protect individuals against purely arbitrary government classifications." *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012). Here, the Plaintiff fails to allege that it is in any way part of a protected class that would be entitled to heightened scrutiny when evaluating its equal protection claim. Therefore, the Plaintiff's claim appears to be a "class-of-one" equal protection claim as recognized by the United States Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam).

### A. Legal Standard for Equal Protection Claims

As the Seventh Circuit has observed, a paradigmatic class-of-one claim is illustrated where "a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties) comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). "As one moves away from the paradigmatic case, the sense of a wrong of constitutional equity, and of a need for a federal remedy, attenuates." *Id.*

In order to prevail on its class-of-one equal protection claim, the Plaintiff must show: (1) that it was "intentionally treated differently from others similarly situated"; and (2) "that there is no rational basis for the difference in treatment." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008). A plaintiff and others are "similarly situated" where they are "identical or directly comparable in all material respects." *LaBella Winnetka v. Village of Winnetka*, 628 F.3d

8

937, 942 (7th Cir. 2010). Further, in order for a governmental action to pass muster under rational

basis scrutiny, the act must simply "be rationally related to a legitimate government interest." *Lyng*

*v. Int'l Union*, 485 U.S. 360, 370 (1988). The Supreme Court has alluded to the rational basis

standard as the "minimum" standard of review when scrutinizing a governmental action, *Board of*

*Trustees v. Garrett*, 531 U.S. 356, 366 (2001), and has described the standard as "typically quite

deferential," *Lyng*, 485 U.S. at 370. Indeed, "[g]overnmental action only fails rational basis

scrutiny if no sound reason for the action can be hypothesized." *Lamers Dairy, Inc. v. USDA*, 379

F.3d 466, 473 (7th Cir. 2004).

Alternatively, to succeed in its equal protection claim, the Plaintiff must show "that the

government is treating unequally those individuals who are prima facie identical in all relevant

respects, and that the cause of the differential treatment is a 'totally illegitimate animus toward the

plaintiff by the defendant.'" *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002)

(quoting *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001)). This alternative approach

is reserved for "unusual circumstances," and "even under this alternative approach 'if the

government would have taken the action anyway, the animus will not condemn the action.'"

*FKFJ, Inc. v. Village of Worth*, No. 18 C 2828, U.S. Dist. LEXIS 102293, * 31 (E.D. Ill. Jun. 11,

2020) (quoting *Nevel*, 297 F.3d at 681).

Under either test, the Seventh Circuit has frequently ruled in favor of municipalities

regarding equal protection claims in the context of zoning, licensing, or permitting decisions—

including some which are factually similar to this case. *See, e.g.*, *Flying J, Inc. v. City of New*

*Haven*, 549 F.3d 538, 546–48 (7th Cir. 2008) (affirming the district court's dismissal of the

plaintiff's equal protection claim because the plaintiff alleged that the city had "maliciously and

spitefully" amended a zoning ordinance to prevent the plaintiff's prospective development, but

9

failed to allege that the ordinance had been applied to anyone else); *Aida Food & Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 402–03 (7th Cir. 2006) (affirming the district court's dismissal of the plaintiffs' class-of-one claim because the plaintiffs "produced no evidence of animus" besides a plaintiff's "deposition testimony that many people in the community have told him that [a city alderman] has 'ill will'" toward the plaintiff and his store"); *Herro v. City of Milwaukee*, 44 F.3d 550, 551–53 (7th Cir. 1995) (affirming the district court's grant of summary judgment to the city where the city presented evidence that it denied the plaintiff a tavern license but granted a tavern license to another individual regarding the same property because the latter procured work permits and provided renovation plans for the property, thus constituting a rational basis).

    **B.**    **The Plaintiff's pleadings and filings are both misleading and untrue; the Plaintiff fails to meet its burden to show that an equal protection violation occurred.**

In this case, the Plaintiff cannot establish that it was treated negatively relative to similarly-situated entities, nor can it show that the placement of restrictions on the Plaintiff's cabaret license was without a rational basis or was the result of "totally illegitimate animus." Troublingly, despite already amending its pleadings once and now seeking to yet again amend its pleadings, the Complaint, Amended Complaint, and Proposed Second Amended Complaint all contain misleading allegations. Moreover, the Declaration of Joseph Cardinali, which is central to the Plaintiff's entire case, contains conclusory statements which are patently false, and are not supported by Mr. Cardinali's own deposition testimony.

First, the Plaintiff's pleadings are misleading with respect to factual allegations which are material to the issue of whether an equal protection violation occurred. In its original Complaint, the Plaintiff alleges that "[i]n the spring of 2016, Plaintiff and *four* other similarly-situated establishments applied for probationary cabaret licenses," and that the Plaintiff received an unrestricted probationary cabaret license. (Dkt. #1, ¶ 15.) The Plaintiff does not allege the names

10

of any such establishment nor describe in any way how those establishments were similarly situated. These same allegations appear in both the Amended Complaint and Proposed Second Amended Complaint. (Dkt. #12, ¶ 20; Dkt. #49, Ex. 1, ¶ 20.)

These allegations are misleading. The Plaintiff's allegations tend to imply that there were only four other applicants for probationary cabaret licenses, and that the Village granted probationary cabaret licenses to all the applicants. But the Plaintiff omits the fact that in actuality, *five* other establishments applied for probationary cabaret licenses, specifically the following: Kenosha Country Club, Cortese Restaurant, Hob Nob Restaurant, Icky Ricky's and Upper Deck. (DSPMF, ¶ 14.)

This detail is central to the issue of whether an equal protection violation occurred here, given that the Plaintiff asserts a class of one equal protection claim based upon its allegation that it was similarly situated to those entities that received unrestricted probationary and\regular cabaret licenses. While the Plaintiff, Kenosha Country Club, Cortese Restaurant, Hob Nob Restaurant, and Icky Ricky's all received probationary cabaret licenses, the Village denied Upper Deck's probationary license application due to a myriad of disturbances and safety issues stemming from Upper Deck. (*Id.*, ¶¶ 17–27.) The Plaintiff was undoubtedly aware of these facts at the time it commenced this action, as both the Plaintiff's and Upper Deck's probationary cabaret license applications were addressed at length on-the-record at a May 24, 2016, Village Board meeting, which representatives of the Plaintiff attended and spoke at. (*Id.*, ¶ 20.)

The facts in record reflect that, if anything, the Plaintiff was most closely situated to Upper Deck—not the other cabaret license applicants. At the May 24, 2016, Village Board meeting, the Village Board specifically addressed police calls regarding each of the applicants. (*Id.*, ¶¶ 19–27.) Village Trustee Jack Aupperle, who was the Village liaison with the Kenosha Sheriff's

11

Department, noted that the Plaintiff's establishment and Upper Deck had been the subject of a nearly identical number of police calls in the year prior—twenty-three for the former, and twenty-six for the latter. (*Id.*, ¶ 23.)

By comparison, the police calls regarding the other four establishments *combined* totaled less than twenty-five percent of the Plaintiff's establishment and Upper Deck. (*Id.*, ¶¶ 17, 23.) In addition, during the probationary cabaret license period, there were reports of numerous police calls to the Plaintiff's establishment for a variety of complaints and incidents on a level unrivaled by the other four establishments holding probationary cabaret licenses. (*Id.*, ¶ 29.) This significant disparity in police involvement reflects how the Plaintiff's establishment was not similarly situated to the other four establishments that received a probationary cabaret license. It is difficult to envision how the Plaintiff's establishment can be considered "identical or directly comparable in all material respects" to the other four establishments that received a probationary cabaret license and unrestricted regular cabaret license.

The Plaintiff's failure to reference Upper Deck, its probationary cabaret license application, or the Village Board's denial of Upper Decks application, at any point in its Complaint, Amended Complaint, or Proposed Second Amended Complaint, is quite telling, as these facts cut directly against the Plaintiff's class-of-one equal protection claim. Indeed, the very facts considered by the Village Board overwhelmingly reflect that the one cabaret license applicant most closely situated to the Plaintiff was Upper Deck, which unlike the Plaintiff, was denied even a probationary cabaret license. Thus, if anything, the Plaintiff received more favorable treatment than the most closely situated cabaret license applicant.

Moreover, assuming Defendants Kitzman and Davison actually influenced the Village Board to place restrictions on the Plaintiff's cabaret license, the Plaintiff cannot show that there

was not a rational basis to do so. The Village ordinances empower the Village Board to, in its discretion, impose conditions on any probationary or regular cabaret license for purposes such as noise reduction, crowd control, and the public safety and welfare. (*Id.*, ¶¶ 9, 12.) Not only was there at least one written complaint made by a neighbor of the Plaintiff prior to the Plaintiff's receipt of a probationary cabaret license, but as noted above, there were ample police reports regarding numerous incidents, including a weekend in January 2016 when over twenty patrons received underage drinking citations. (*Id.*, ¶¶ 17–18, 24.) In considering whether to grant the Plaintiff a probationary cabaret license, the Village Board expressly considered that weekend in January 2016, along with the myriad other police calls made in the year prior. (*Id.*, ¶¶ 21–27.) The Village Board even informed the Plaintiff on the record at the May 24, 2016, meeting that it was down to its last strike, but that it would be given another chance. (*Id.*, ¶¶ 26–27.)

Additionally, though the Plaintiff claims it had no issues during the probationary cabaret license period, that claim is refuted by sheriff's reports indicating calls to the police regarding noise complaints, disorderly conduct, battery, and other issues. (*Id.*, ¶ 29.) The Village was aware of these reports prior to determining whether to grant the Plaintiff a regular cabaret license, and if so, what restrictions to place on that license. (*Id.*, ¶¶ 36–37.) There was an abundantly rational basis to place restrictions on the Plaintiff's regular cabaret license.

Additionally, the facts in the record do not support any contention that the Defendants acted with some sort of "illegitimate animus" towards the Plaintiff in placing restrictions on the Plaintiff's regular cabaret license. Such a claim is largely based upon the Declaration of Joseph Cardinali, who asserts in his declaration that Defendants Kitzman and Davison caused him to carry out a personal vendetta against the Plaintiff. (Dkt. #12, Ex. C, ¶ 10.) Mr. Cardinali further attests that "the Village never confirmed that it had any documentation of any complaints or issues with

13

Somers House," that he "never saw a single sheriff's report or police report against Somers House." (*Id.*, ¶¶ 11–12.)

Simply put, the conclusory statements in Mr. Cardinali's declaration relied upon by Plaintiff are false. Mr. Cardinali could not support the underlying basis for the conclusory statements in his declaration during his deposition. Where "common sense and human experience" compel a conclusion that a declaration is false, at a minimum, a court may in its discretion choose to not accept the declaration as true. *Alexander v. Caraustar Indus.*, 930 F. Supp. 2d 947, 951 (N.D. Ill. 2013). A false statement in a declaration made under penalty of perjury can also form grounds for dismissal of a matter in its entirety. *See id.* at 958–962 (dismissing an action where the plaintiffs' filed "glaring[ly]" false declarations containing perjurious statements, which required discovery and depositions to "ferret them out," and where the plaintiffs failed to provide any plausible explanation for the false statements).

In his declaration, Mr. Cardinali avers that he believes that no sheriff's reports or police reports existed. (Dkt. #12, Ex. C, ¶ 27.) He further attests, "I was led to believe that police presence was constantly required at Somers House, that complaints from residents were common, and that police reports were plentiful. I now know that none of this was true." (*Id.*, ¶ 26.) These conclusory statements are not supported by Mr. Cardinali's own deposition testimony, where he admitted that in 2016, he was made aware of problems at the Plaintiff's establishment on multiple occasions. Mr. Cardinali admitted that he received an email from Trustee Aupperle on January 9, 2016, regarding seventeen underage drinking citations issued to patrons of the Plaintiff's establishment. (DSPMF, ¶ 47.) Mr. Cardinali also admitted that he was aware of an email sent from Village Board President George Stoner to Trustee Aupperle regarding the incident, where Mr. Stoner requested that Trustee Aupperle and Mr. Cardinali look into the matter and provide a

14

recommendation. (*Id.*) Mr. Cardinali testified that he and Trustee Aupperle subsequently met to discuss the incident. (*Id.*) Mr. Cardinali further admitted during his deposition that he was present at the May 24, 2016, meeting to address Plaintiff's probationary license when Trustee Aupperle read from a sheriff's report detailing over twenty complaints leading to police visits in the year prior. (*Id.*, ¶ 48.)

Mr. Cardinali also admitted during his deposition that he did nothing before making the statement in his January of 2019 declaration that "[he] now believe[s] [damning reports of the Somers House bad acts] do not exist or were severely exaggerated" to try to confirm whether those damning reports actually existed. (*Id.*, ¶ 49.) Further, Mr. Cardinali admitted at his deposition that at least one investigative report that would fall into the category of reports he believed did not exist at the time he signed his declaration was presented to him for the first time during his deposition. (*Id.*, ¶ 50.) The notion that Mr. Cardinali "now know[s]" there were no issues at the Plaintiff's establishment is truly remarkable given that Mr. Cardinali admits he was previously made aware of numerous, verified police reports regarding issues at the Plaintiff's establishment and undertook no measures to investigate those reports at any time. As reflected in his deposition testimony, Mr. Cardinali's declaration containing conclusory statements is false and could not be supported by underlying facts, and should at a minimum be disregarded for the purposes of summary judgment.

Further, even assuming for purposes of this motion only that certain Village trustees or officials harbored any animus towards the Plaintiff, it does not change the fact that there were a host of legitimate reasons for imposing restrictions on the Plaintiff's regular cabaret license. Therefore, any animus, to the extent it existed, "will not condemn the action." *See FKFJ, Inc.*, 2020 U.S. Dist. LEXIS 102293 at * 31.

Accordingly, the Plaintiff cannot show that the Village Board's decision to grant the Plaintiff a restricted cabaret license lacked a rational basis or was the result of "totally illegitimate animus." There were numerous reports of incidents, complaints, and other issues at the Plaintiff's establishment occurring before and during the Plaintiff's probationary cabaret license. The Village Board relied on those reports in first granting the Plaintiff a probationary cabaret license with the understanding that the Plaintiff was down to its last proverbial strike, and then granting the Plaintiff a regular cabaret license with restrictions placed upon it. Mr. Cardinali's declaration containing unsupported conclusory statements does not subvert those facts.

Because the Plaintiff cannot show that it was treated differently than similarly-situated entities and cannot show that the Village Board's placement of restrictions on the Plaintiff's regular cabaret license lacked a rational basis or was the result of "totally illegitimate animus," the Plaintiff's equal protection claim must be dismissed.

II. **The Plaintiff's 42 U.S.C. § 1983 claim based on substantive due process must be dismissed because: (1) the Plaintiff failed to allege that state law remedies were inadequate, (2) the Plaintiff lacked a property interest in an unrestricted cabaret license, and (3) the evidence in the record fails to show arbitrary or irrational acts.**

The Plaintiff also alleges a substantive due process violation against the individually-named Defendants. Specifically, the Plaintiff alleges that it "has a known property interest in receiving an unrestricted cabaret license under the Village's ordinances," seemingly based on its allegation that it "received its probationary license without any restrictions and satisfied all obligations during the probationary period without any complaint from any resident." (Dkt. #12, ¶¶ 62–63.) The Plaintiff further alleges that the Defendants Kitzman and Davison influenced the Village Board to "irrationally and arbitrarily" place restrictions on the Plaintiff's cabaret license, thus violating its right to substantive due process. (*Id.*, ¶ 80.)

16

### A. Legal Standard for Substantive Due Process Claims

From the outset, it is noteworthy that the Seventh Circuit has recently recognized that "[s]uccessful constitutional challenges to state and local land-use decisions generally rely on the takings clause of the Fifth Amendment (as incorporated by the Fourteenth) or the equal protection clause of the Fourteenth Amendment." *CEnergy-Glenmore Wind Farm #1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014). While the Supreme Court and Seventh Circuit have "acknowledged at least the theoretical possibility" that a land-use decision could violate substantive due process rights, neither the Supreme Court nor Seventh Circuit has ever "definitively concluded that any land-use decision actually amounted to a deprivation of property without substantive due process." *Id.* at 488 ("We have held repeatedly that a plaintiff who ignores potential state law remedies cannot state a substantive due process claim based on a state-created property right.").

To prevail in a 42 U.S.C. § 1983 claim based on substantive due process, the Plaintiff must prove: "(1) that the claimed interest is a property or liberty interest under the fourteenth amendment; (2) that 'the alleged loss . . . amounted to a deprivation'; and (3) that the deprivation was without due process of law." *Bayview-Lofberg's, Inc. v. Milwaukee*, 905 F.2d 142, 144 (7th Cir. 1990) (quoting *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989)). A deprivation is without due process of law in a substantive due process context when the government acts in a manner which is "arbitrary and irrational." *See Contreras*, 119 F.3d at 1294–95.

### B. The Plaintiff failed to allege that no adequate state law remedies existed.

The Defendants previously argued in their Motion to Dismiss that the Plaintiff failed to exhaust state remedies. (*See* Dkt. #14.) That argument was based on a reading of the Amended Complaint as invoking the Takings Clause of the Fifth Amendment, not due process protection

under the Fourteenth Amendment. (*See id.*) Of course, the Court has since ruled that the Plaintiff is not asserting a claim invoking the Takings Clause. (Dkt. #29.)

Notably, with regards to substantive due process claims based on a deprivation of a state-created property interest, the Seventh Circuit has fashioned out a unique and more-stringent test than other circuits, additionally requiring the plaintiff to show "that the [government] committed a separate constitutional violation or that state law remedies are inadequate." *Contreras*, 119 F.3d at 1295.[2] Indeed, the Seventh Circuit has "held repeatedly that a plaintiff who ignores potential state law remedies cannot state a substantive due process claim based on a state-created property right." *CEnergy*, 769 F.3d at 488–89; *see, e.g.*, *Contreras*, 119 F.3d at 1295 (concluding that the plaintiffs' substantive due process claims must fail because the plaintiffs did not show an independent constitutional violation and "have attempted neither in the District Court . . . nor here on appeal to show that state law remedies are inadequate); *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996); *Labella Winnetka v. Village of Winnetka*, Case No. 07-C-6633, 2009 U.S. Dist. LEXIS 21593 (N.D. Ill. March 18, 2009) (dismissing the plaintiff's substantive due process claim because the plaintiff only provided a conclusory allegation that it "has no state law remedy available to it to address this unlawful conduct by the [Defendants]").

Here, at no point in the Plaintiff's Amended Complaint does it allege that state law remedies were inadequate. Nor can the Plaintiff show that state law remedies were inadequate. The Plaintiff could have sought review with the Village, followed by review in the state court system. Though the Plaintiff initially sought administrative review and even obtained a hearing

---

[2] The Seventh Circuit has explained the rationale for its test, stating, "Without this requirement, procedural due process claims based on 'random and unauthorized' deprivations of property (which might also be described as 'arbitrary') could be brought as substantive due process claims even when a post-deprivation remedy was available." *CEnergy*, 769 F.3d at 489. The court in *CEnergy* further explained that holding otherwise would "undermine" Supreme Court decisions holding "that a post-deprivation remedy is sufficient to satisfy due process in such situations." *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981)).

18

date, it elected to abandon that avenue prior to the scheduled May 1, 2017 hearing. (DSPMF, ¶ 38.) This failure means that under the analysis set forth in *Contreras*, the Plaintiff's substantive due process claim cannot survive absent a showing of a separate constitutional violation. Since the only other constitutional violation asserted is a violation of the equal protection clause, the Plaintiff's substantive due process claim in this matter necessarily depends on the success of its equal protection claim. As discussed above, the Plaintiff's equal protection claim fails, meaning that its substantive due process claim also must fail under *Contreras*.

### C. The Plaintiff cannot show that it had a property interest in an unrestricted cabaret license.

Additionally, the Plaintiff cannot show that it had a property interest in an unrestricted cabaret license such that a substantive due process violation could have occurred. The Seventh Circuit has recognized that "where a municipal ordinance provides substantive criteria which, if met, dictate the issuance of a permit, an applicant who has met those criteria might assert a legitimate claim of entitlement to the permit." *Polenz*, 883 F.2d at 556. However, the crucial word is "entitlement." "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (7th Cir. 1972). To the extent an application for a license or permit "appeals to discretion rather than to rules, there is no property [interest]." *Scott v. Village of Kewaskum*, 786 F.2d 338, 339 (7th Cir. 1986).

Indeed, the Seventh Circuit has held that where a statute or ordinance leaves municipalities with discretion in deciding whether or not to issue a particular entity a license or permit, there is no entitlement to such a license or permit, and therefore no property interest is created by the mere filing of a license or permit application. *See, e.g.*, *Bayview-Lofberg's*, 905 F.2d 142 (rejecting the

plaintiff's substantive due process claim because the Wisconsin statute in question left municipalities with a "great deal of discretion" in issuing licenses, meaning that the plaintiff was not entitled to a liquor license merely by applying for one and thus had no protected property interest); *Village of Kewaskum*, 786 F.2d at 339–40 (holding that the plaintiff failed to identify a property interest in a liquor license because the Wisconsin Statutes afford municipalities the discretion to grant liquor licenses "to such persons as they deem proper" and "no fact or set of facts creates a right to a license").

Here, the decision-making process regarding whether to grant a cabaret license to a particular applicant is rife with discretion that obviates the notion that the Plaintiff had any entitlement to an unrestricted cabaret license. Under § 12.15(B)(5) of the Village ordinances, the Village Board is required to consider an application for a probationary cabaret license, assuming certain procedural prerequisites occur. (DSPMF, ¶¶ 5–6.) However, the Village Board has discretion to grant or deny an application. (*Id.*, ¶ 7.) In addition, the Village Board has discretion to grant probationary licenses "based upon the written agreement of the applicant to comply with conditions set forth by the Village Board," which must be related to "the safety, health and welfare of the general population including noise and crowd disturbances and parking." (*Id.*, ¶ 9.) Following the probationary period, the Village Board again may grant a regular license "based upon the written agreement of the applicant to comply with conditions set forth by the Village," which "may be imposed [to] address the safety, health and welfare of the general population including noise and crowd disturbances and parking." (*Id.*, ¶ 12.)

As explained above, the Village Board exercised its discretion to place restrictions on the Plaintiff's regular cabaret license based on reports of noise complaints, disorderly conduct, and other issues occurring prior to and during the effective period of the Plaintiff's probationary cabaret

license. (*Id.*, ¶¶ 29, 36–37.) These restrictions, which included a reduction in hours during which cabaret entertainment may be offered, a ban on outside cabaret entertainment, and a requirement that the back door remain shut, relate directly to "noise and crowd disturbances" contemplated in the Village ordinances. (*See id.*, ¶ 37.) Therefore, the Plaintiff can hardly claim that the Village Board had no discretion regarding the Plaintiff's regular cabaret license application such that the Plaintiff was entitled to receive an unrestricted regular cabaret license simply by filing an application for the same. The Plaintiff thus cannot show that it had a property interest in receiving an unrestricted cabaret license, and its substantive due process claim accordingly fails.

**D.      Additionally, the Plaintiff cannot show that the placement of restrictions on the Plaintiff's cabaret license was arbitrary and irrational.**

Lastly, the Plaintiff cannot show that the Defendants deprived the Plaintiff of any property interest without due process of law. As stated above, in a substantive due process context, a deprivation without due process of law occurs when the deprivation is "arbitrary and irrational." *See Contreras*, 119 F.3d at 1294–95. Notably, where discretionary decisions pertaining to local land use are at issue, as in this case, a plaintiff "must overcome a presumption that the decision was reasonable and prove that the decision was irrational." *See Polenz*, 883 F.2d at 558 (addressing a substantive due process claim regarding a discretionary decision of local zoning officials).

The Plaintiff cannot overcome this presumption. As explained in detail previously, Defendants Kitzman and Davison, along with the Village Board members, were aware of numerous complaints involving noise, disorderly conduct, underage drinking, and other issues with the Plaintiff's establishment occurring prior to and during the Plaintiff's probationary cabaret license period. The Village Board did not deny the Plaintiff a regular cabaret license, but placed

restrictions on the license in an attempt to curb the myriad issues reported with the Plaintiff's establishment while still allowing the Plaintiff to operate as a cabaret. Mr. Cardinali's declaration containing unsupported conclusory statements does nothing to overcome the presumption in the Village's favor or the facts in the record reflecting the reasonable rationale for the placement of restrictions on the Plaintiff's regular cabaret license.

### III. Additionally, the Plaintiff's 42 U.S.C. § 1983 claims against Defendants Kitzman and Davison, in their individual capacities, must be dismissed because those Defendants have qualified immunity.

In addition, the Plaintiff's 42 U.S.C. § 1983 claims for alleged substantive due process and equal protection against Defendants Kitzman and Davison, in their individual capacities, must be dismissed because both Defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant sufficiently pleads the affirmative defense of qualified immunity, a plaintiff must establish two elements: (1) that the facts alleged or shown "make out a violation of a constitutional right," and (2) "that the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* "If either inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotation marks omitted).

Regarding the second prong of the test, "[t]o be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (internal quotation marks omitted). "The crucial question is whether the official acted reasonably in the particular

circumstances that he or she faced." *Id.* (alterations in original) (internal quotation marks omitted). Typically, to show that a constitutional right was "clearly established," a plaintiff "must point to a closely analogous case finding the alleged violation unlawful." *Id.* (internal quotation marks omitted). While an identical case is not required, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)).

Here, the Defendants raised the affirmative defense of qualified immunity as to the individually named Defendants in their answer to the Amended Complaint. (Dkt. #13 at 16.) In turn, the Plaintiff cannot meet its burden to overcome the application of qualified immunity to Defendants Kitzman and Davison. First, as discussed at length above, the facts in the record do not "make out a violation of a constitutional right." *See Harlow*, 457 U.S. at 818. On that basis alone, Defendants Kitzman and Davison are entitled to qualified immunity.

Second, even if the facts in the record indicated some violation of a constitutional right, there was no "clearly established" right at the time the Plaintiff received a restricted cabaret license. There is little analogous case law in the Seventh Circuit regarding qualified immunity in the context of permitting or licensing decisions with respect to local taverns or similar properties. In *Cathy's Tap, Inc. v. Village of Mapleton*, 65 F. Supp. 2d 874 (C.D. Ill. 1999), the district court held that the Village of Mapleton's mayor/board president was entitled to qualified immunity where the village board revoked the plaintiff's liquor license for violating an ordinance banning live nude dancing. *Id.* at 893-94. The ordinance was enacted after the plaintiff was granted a liquor license, and the plaintiff challenged the constitutionality of the ordinance. *Id.* The court held that the mayor/board president was entitled to qualified immunity because the law regarding

the constitutionality of the enactment and enforcement of the ordinance "was anything but well-settled." *Id.*

Similarly here, the Plaintiff's claimed constitutional right is anything but "well-settled." The Village ordinances provided the Village Board with discretion to grant or deny cabaret license applications, as well as grant a cabaret license subject to certain restrictions. Defendants Davison and Kitzman provided information to the Village Board, and the Village Board exercised its discretion in granting the Plaintiff a restricted cabaret license. A sweep of case law regarding qualified immunity does not reveal a closely analogous case where a constitutional right akin to that which the Plaintiff is claiming has been "clearly established." In other words, this is the precise sort of scenario where the doctrine of qualified immunity applies to individually named defendants such as Mr. Kitzman and Mr. Davison. Accordingly, notwithstanding the fact that the Plaintiff's substantive due process and equal protection claims should be dismissed on the merits, Defendants Kitzman and Davison are entitled to qualified immunity and should be dismissed from this action.

**IV. The Plaintiff's *Monell* claims must be dismissed because: (1) a *Monell* claim against Defendants Kitzman and Davison, in their official capacities, is redundant; and (2) because no constitutional violation occurred.**

    **A. The official capacity claims asserted against Defendants Kitzman and Davison should be dismissed as redundant.**

In addition to suing Defendants Kitzman and Davison in their individual capacities, the Plaintiff asserts *Monell* claims against them in their official capacities. Specifically, the Plaintiff claims that Defendants Kitzman and Davison violated the Plaintiff's constitutional rights through creating, adopting, and enforcing an unconstitutional policy as it related to the cabaret license application process. (Dkt. #20, ¶¶ 113–134.) Because official capacity claims under *Monell* against individuals are essentially claims against the municipality, they should be dismissed when

24

the municipality is named.  *See Budd v. Motley*, 711 F.3d 840, 843–44 (7th Cir. 2013) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55 (1978)); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987); *Comsys, Inc. v. City of Kenosha Wisconsin,* 223 F. Supp. 792, 802 (E.D. Wis. 2016).  Since the Village is named here, the *Monell* claims against Defendants Kitzman and Davison in their official capacities should be dismissed.

> **B.      In addition, the Plaintiff's *Monell* claim against the Village should also be dismissed because the Plaintiff cannot show that a constitutional violation occurred.**

The Supreme Court has restricted the scope of municipal liability under 42 U.S.C. § 1983 to "action[s] pursuant to official municipal policy of some nature [which] caused a constitutional tort."  *Monell*, 436 U.S. at 691.  It is well-established that any *Monell* claim necessarily depends on the occurrence of an underlying constitutional violation.  *Elizarri v. Sheriff of Cook Cty.*, 901 F.3d 787, 792 (7th Cir. 2018) ("[I]t is established that a municipality cannot be held liable without an underlying violation of the Constitution by a municipal employee.").  For the numerous reasons already stated with respect to the Plaintiff's equal protection and substantive due process claims, no constitutional violation occurred in this case.   Since the Plaintiff cannot show that the individually named Defendants committed any constitutional violation, the Plaintiff's *Monell* claim against the Village must necessarily fail.

**CONCLUSION**

This case boils down to a local tavern that is upset about conditions placed upon its cabaret license issued properly by the Village of Somers under the Village ordinances.  While the Plaintiffs may be unhappy with those restrictions, for the reasons set forth above, no equal protection or substantive due process violation occurred with respect to the Plaintiff.  Moreover, Defendants Kitzman and Davison are entitled to qualified immunity, as the Plaintiff cannot show that any

25

violation of a clearly established constitutional right occurred. Lastly, the Plaintiff's *Monell* claims fail as to all Defendants, as no underlying constitutional violation occurred and the Plaintiff's *Monell* claims against Defendants Kitzman and Davison, in their official capacities, is redundant.

Dated at Milwaukee, Wisconsin, this 3rd day of September, 2020.

s/ Jason P. Gehring
State Bar No. 1061084
Andrew S. Hovestol
State Bar No. 1102699
Attorneys for Defendants the Village of Somers,
Timothy Kitzman, and Jeffrey Davison
Kasdorf, Lewis & Swietlik, S.C.
One Park Plaza, Suite 500
11270 West Park Place
Milwaukee, WI 53224
Phone: (414) 577-4000
Fax:    (414) 577-4400
jgehring@kasdorf.com
ahovestol@kasdorf.com

26